UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

SLS BRANDS, LLC,
                              Plaintiff,

                -v-                                                    19-CV-8115 (JPO)

AUTHENTIC BRANDS GROUP, LLC,                                           OPINION AND ORDER
ET AL.,
                              Defendants.

———————————————————————

J. PAUL OETKEN, District Judge:

Plaintiff SLS Brands, LLC ("SLS") filed this suit against Defendants Authentic Brands Group, LLC ("ABG"), Spyder Active Sports, Inc. ("Spyder"), and CBD Universe, LLC ("CBDU"), alleging breach of contract and breach of the covenant of good faith and fair dealing against ABG and Spyder and tortious interference with contract against CBDU and ABG. (*See* Dkt. No. 33 ("Compl.").) CBDU moves to dismiss the tortious interference claim and the punitive damages sought against it under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 47.) For the reasons that follow, CBDU's motion is denied.

**I.    Background**

The following facts are taken from the operative complaint and are presumed true for the purposes of this motion.

SLS is a Florida limited liability company. (Compl. ¶ 9.) On September 1, 2017, it entered into a Licensing Agreement ("Agreement") as licensee with co-licensors Spyder and ABG. (Compl. ¶ 17.) The Agreement was to run through December 31, 2022 and allowed SLS to sell skincare products with Spyder's trademark. (Compl. ¶¶ 19–20, 22–23.) It also prohibited ABG and Spyder from entering into an agreement with a third party to produce or manufacture such products during the term of the Agreement. (Compl. ¶ 25.) While a party to the

1

Agreement, SLS developed and marketed new Spyder products, spending approximately $405,000 to do so.  (Compl. ¶¶ 29-31.)

On January 15, 2019, ABG and non-party Tilray announced a revenue sharing deal in which Tilray would pay ABG up to $250 million to create new cosmetic products and become ABG and Spyder's new preferred supplier of such products.  (Compl. ¶ 34.)  Alongside the announcement was a promotional image of "Spyder Powered by Tilray," a new product which violated the Agreement.  (Compl. ¶¶ 34–35.)  CBDU has an undisclosed relationship to Tilray that allows CBDU to produce, manufacture, and sell the "Spyder Powered by Tilray" product line.  (Compl. ¶ 37.)

On June 7, 2019, ABG and Spyder emailed SLS to inform the company that Spyder was "tweaking [its] product licenses" to reflect its partnership with Tilray and CBDU and asked SLS to sign an amendment to the Agreement accordingly.  (Compl. ¶ 39.)  SLS declined to do so, and on June 19, 2019, ABG sent SLS a "Notice of Termination" alleging "Repetitive Breaches" under the Agreement based on six prior, allegedly late payments.  (Compl. ¶¶ 40, 42; Dkt. No. 33-5.)  Spyder and ABG had accepted these payments without issue and gave SLS no opportunity to cure, and SLS was current in its payment obligations.  (Compl. ¶¶ 42–43.)

On or around July 1, 2019, ABG and Spyder entered into a license agreement with CBDU containing provisions that were nearly identical to those in their Agreement with SLS, while additionally granting CBDU the rights to Tilray products.  (Compl. ¶ 44.)

SLS filed this suit on August 30, 2019.  (Dkt. No. 1.)

## II.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering the motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002). And while "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, the Court must draw "all inferences in the light most favorable to the nonmoving party[ ]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

## III. Discussion

### A. Motion to Dismiss

CBDU's core contention is simple: SLS has failed to sufficiently plead multiple elements of a tortious interference with contract claim. Under New York law, such action requires a plaintiff to allege: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.,* 449 F.3d 388, 401–02 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 424 (1996)). The plaintiff must also allege that the defendant's actions were the "but for" cause of the alleged breach. *Sharma v. Skaarup Ship Mgmt. Corp.,* 916 F.2d 820, 828 (2d Cir. 1990) (citation omitted). CBDU argues that SLS has failed to sufficiently allege (1) CBDU's knowledge of the Agreement, (2) CBDU's intentional interference with the Agreement, and (3) that CBDU's actions were the but-for cause of the breach.

Typically, a plaintiff in a tortious interference case may not allege "conclusory assertions of knowledge," *Taboola, Inc. v. Ezoic Inc.*, 17 Civ. 9099, 2020 WL 1900496, at *10 (S.D.N.Y. Apr. 17, 2020) (quoting *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 813 (S.D.N.Y. 2008), or "pleadings based solely on information and belief," *Taboola,* 2020 WL 1900496, at *10 (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018)). But the *Twombly-Iqbal* plausibility standard "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotations and citations omitted). Thus, when assessing whether SLS's allegations survive a motion to dismiss, this Court must take into account whether CBDU has "peculiar[]" possession and control over relevant facts and whether such facts lead to a plausible inference of culpability. *Id.*

### 1. CBDU's Knowledge of the Agreement

"Under New York law, a plaintiff must have some knowledge of the terms and conditions of the allegedly-interfered-with contract but perfect or precise knowledge is not required." *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 349 (S.D.N.Y. 2020). Contentions that "a defendant should have known about a contract or its terms 'as a matter of course' or based on 'common practice' within an industry are [] insufficient." *Taboola, Inc. v. Ezoic Inc.*, 2020 WL 1900496, at *10 (citing *AA Tube Testing Co.*, 246 N.Y.S.2d at 247, 248 (2d Dep't 1964)).

SLS cites paragraphs 8, 33, 62, 64, and 66–68 of its second amended complaint in urging that it has adequately pleaded CBDU's knowledge of the Agreement. (Dkt. No. 51 at 8.) But paragraph 8 asks the Court to enter judgment that CBDU tortiously interfered with the

Agreement, with no elaboration; paragraph 33 states conclusorily, with no support, that CBDU had actual knowledge of the agreement and of SLS's development and marketing efforts; paragraph 62 merely reincorporates paragraphs 1 through 61; paragraph 64 once again asserts, without specific facts, that CBDU has actual knowledge of the agreement; and paragraphs 66 to 68 state that, "[u]pon information and belief," CBDU knew about the Agreement when the January 15, 2019 revenue sharing deal was announced, as CBDU was to become the licensee of the same products and distribution channels granted to SLS. (Compl. ¶¶ 8, 33, 62, 64, 66–68.) On their own, these assertions do little to suggest CBDU possessed "some knowledge" about the Agreement. *Visbal*, 431 F. Supp. 3d at 349.

But taken alongside the course of conduct laid out in the complaint, such allegations, viewed in the light most favorable to the plaintiff, are sufficient to survive dismissal. Tilray and ABG announced a lucrative deal in January 2019. (Compl. ¶ 34). CBDU had a relationship with Tilray — giving CBDU certain rights to products, manufacture, and sell Tilray products — but to do so would violate the Agreement. (Compl. ¶¶ 36–37.) Critically, SLS alleges that ABG and Spyder emailed SLS in June 2019 asking to amend the Agreement "due to its strategic partnership with Tilray *and CBDU*." (Compl. ¶ 39 (emphasis added).) When SLS declined, and less than two weeks after first asking for an amendment ABG terminated the agreement, ABG and Spyder promptly replaced SLS with CBDU in its licensing agreement. (Compl. ¶¶ 39, 42, 44.)

The plausible inference is clear: ABG and Spyder wanted CBDU as licensee and had it ready to replace SLS. Presumably, in negotiating the CBDU license deal rooted in the January 2019 revenue-sharing deal and executed in July 2019, CBDU learned that SLS had previously contracted with ABG and Spyder. It is unclear what, precisely, CBDU knew about the

5

Agreement at the time of the alleged breach, but this Court finds it plausible to infer, for the purposes of this motion, that CBDU had "some knowledge" of the Agreement, given that it was actively working alongside ABG and Spyder to replace SLS.  *Visbal*, 431 F. Supp. 3d at 349. This conclusion is particularly warranted given that CBDU alone has "possession and control" over facts about its knowledge of the Agreement; it is unclear what more could be expected from SLS, absent discovery, to determine the extent of CBDU's knowledge.  *See Arista Records, LLC v. Doe 3*, 604 F.3d at 120.

SLS has sufficiently alleged facts supporting a plausible inference that CBDU knew about the Agreement.

### 2.      CBDU's Intent to Interfere with the Agreement

To satisfy the intent element, "it is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third party's contract with the plaintiff; instead, the evidence must show that the defendant's objective was to procure such a breach." *Roche Diagnostics GmbH v. Enzo Biochem, Inc.*, 992 F. Supp. 2d 213, 221 (S.D.N.Y. 2013).

In addition to paragraphs 8, 33, 62, and 66-67, described *supra*, SLS cites paragraphs 38, 41, 44, and 71-72 from its second amended complaint as evidence that CBDU intended to interfere with the Agreement.  (Dkt. No. 51 at 8.)  Paragraph 38, 41, and 71 are conclusory; paragraph 44 merely describes the licensing agreement ABG and Spyder entered into with CBDU after terminating SLS; and paragraph 72 states that CBDU, via "communications and negotiations" with ABG and Spyder — including through CBDU's CEO — "encouraged and induced" breach of the Agreement.  (Compl. ¶¶ 38, 41, 44, 71–72.)

CBDU contends that these allegations, "crafted from speculation and innuendo," do not suffice to demonstrate its intent to interfere with the Agreement.  (Dkt. No. 48 at 5.)  On this

point, *Roche Diagnostics GmbH v. Enzo Biochem Inc.*, 992 F. Supp. 2d 213 (S.D.N.Y. 2013), is instructive. There, the plaintiff argued that a third party breached an exclusive distribution agreement with the plaintiff when it instead purchased from the defendant. *Id*. at 216, 220. The court found "that fact alone would not support the inference that [defendant] was *targeting* the contract" and could not establish intent on a tortious interference with contract claim. *Id*. at 222. *See also Sound Move Autoplaza, Inc. v. Nissan Motor Co., Ltd.*, 1989 WL 50797, at *12 (E.D.N.Y. May 8, 1989) ("Although the complaint is replete with innuendo concerning bad faith and maliciousness . . . these suggestions are not sufficiently pleaded so as to be understood as alleging the requisite element of intent. Simply showing that [defendant] ultimately benefited from its alleged [breach] will not establish tortious interference.").

Here, the fact that CBDU may have known about the Agreement and stood to gain from ABG and Spyder's alleged breach leads to the plausible inference, on a Rule 12(b)(6) motion, that it intended to tortiously interfere with SLS's contract. Once again, taking into account that facts regarding CBDU's intent "are peculiarly within [CBDU's] possession and control," this Court concludes that SLS has made a showing sufficient to survive the present motion. *Arista Records, LLC* 604 F.3d at 120. The fact that ABG and Spyder breached the Agreement does not, on its own, support the interference that CBDU was "targeting" the Agreement. *Roche Diagnostics GmbH*, 992 F. Supp. 2d at 222. But on the facts and course of conduct alleged, it is plausible that CBDU was aware of the Agreement and nevertheless entered into a contractual relationship with ABG and Spyder — "encourag[ing] and induc[ing] breach" — targeting the Agreement in order to do so. (Compl. ¶ 72.) For the present motion, this showing is enough.

SLS has sufficiently alleged facts supporting a plausible inference that CBDU intended to interfere with the Agreement.

### 3. CBDU's Actions as But-For Cause of the Breach

To satisfy the causation element, a plaintiff "must specifically "allege that the contract would not have been breached but for the defendant's conduct." *Ferrandino & Son, Inc. v. Wheaton Builders, Inc., LLC*, 920 N.Y.S.2d 123, 125 (2d Dep't 2011).

In addition to paragraphs 8, 38, 41, 62, 66-68 and 71-72, described *supra*, SLS cites paragraphs 69-70 and 73-74 from its second amended complaint as evidence that CBDU's conduct was the but-for cause of ABG and Spyder's breach. (Dkt. No. 51 at 8.) Paragraphs 69 and 70 allege that CBDU negotiated with ABG and Spyder to take over the contractual rights that at the time were promised SLS by the Agreement, and paragraphs 73 and 74 allege actual breach and damages. (Compl. ¶¶ 69-70, 73-74.)

CBDU points out that the only conduct SLS cites were actions taken by Spyder and ABG alone. (Dkt. No. 48 at 7.) But once again, this Court will look to the course of conduct alleged in its entirety with the recognition that CBDU controls most of the facts regarding its actions. Based on SLS's allegations, the Court finds it a plausible inference that CBDU's actions — negotiating with ABG and Spyder to essentially take over SLS's obligations under the Agreement — was the but-for cause of the breach. Absent these negotiations, after all, ABG and Spyder would have had no party to replace SLS.

SLS has sufficiently alleged facts supporting a plausible inference that CBDU's conduct was the but-for cause of the breach.

### B. Punitive Damages

CBDU also asks the Court to dismiss SLS's demand for punitive damages against it. In New York, such damages are available "only in those limited circumstances where it is necessary to deter . . . conduct that may be characterized as gross and morally reprehensible, and

8

of such wanton dishonesty as to imply a criminal indifference to civil obligations." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 315–16 (1995).  Additionally, "where there is a close nexus between the [] tortious conduct and the contract from which it is said to arise" — such as in cases of fraudulent inducement or "conduct outside the contract but intended to defeat the contract" — then a court may award punitive damages only if such conduct was "directed at the public." *MacQuesten Gen. Contrating, Inc. v. HCE, Inc.*, 296 F. Supp. 2d 437, 446–47 (S.D.N.Y. 2003), *aff'd,* 128 F. App'x 782 (2d Cir. 2005).

It may very well be that CBDU's behavior was not morally reprehensible, directed at the public, or borne of criminal indifference to civil obligations.  But at the present stage, absent additional facts and evidence about CBDU's conduct, it is premature for this Court to make such a determination.

SLS's prayer for punitive damages remains.

## IV.    Conclusion

For the foregoing reasons, CBDU's motion to dismiss is DENIED.  CBDU shall file an answer to the operative complaint within 14 days after the date of this Opinion and Order.

The Clerk is Court is respectfully directed to close the motion at Docket Number 47.

SO ORDERED.

Dated: February 4, 2021
New York, New York

_____
J. PAUL OETKEN
United States District Judge

9